# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| XCEED MANAGEMENT GROUP, LLC, § § *Plaintiff,* § § v. § § ASSUREDPARTNERS AEROSPACE, § LLC d/b/a AIRSURE LIMITED LLC, § § *Defendant.* § | Civil Action No. 4:23-cv-690 Judge Mazzant |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant AssuredPartners Aerospace, LLC d/b/a Airsure Limited, LLC's Motion for Summary Judgment (Dkt. #22). Having considered the motion and relevant pleadings, the Court finds the motion should be **GRANTED**.

### BACKGROUND

This case arises out of an emergency hard landing that totaled an aircraft owned by Plaintiff Xceed Management Group, LLC's ("Xceed"). The pilots and passengers were not injured, but the aircraft suffered significant damage, resulting in a total loss. The aircraft—a Cessna Citation II bearing the federal registration number N550DW—had an insured value of $742,500. Because the two pilots who had manned the aircraft failed to meet certain requirements contained in the aircraft's insurance policy, Xceed's claim for the loss of the aircraft was ultimately denied. Xceed sued its insurance broker, Defendant AssuredPartners Aerospace, LLC d/b/a Airsure Limited, LLC ("AssuredPartners"), for negligence, alleging that AssuredPartners breached its duty to procure additional insurance covering Timothy Taylor—the pilot in command—or to inform Xceed that Taylor would not be covered under the policy.

On April 1, 2022, Xceed requested that AssuredPartners procure an insurance policy for the aircraft with the following policy terms and coverage: (a) insured valued of $742,500; (b) liability limits of $10 million; and (c) naming Jim Johnson, Rodney Wilson, and Jean Gray as the pilots authorized by Xceed to operate the aircraft ((Dkt. #22, Exhibit 5 at p. 2). AssuredPartners successfully procured such policy from QBE Insurance Corporation ("QBE") (Dkt. #22, Exhibit 5 at p. 3). The policy had an effective period from April 1, 2022, through April 1, 2023 (Dkt. #22, Exhibit 5 at p. 3).

On April 4, 2022, AssuredPartners provided Xceed a certificate of insurance and a confirmation of coverage, which both documented the insurance coverage and policy terms that Xceed requested for the aircraft ((Dkt. #22, Exhibit 5 at p. 4). The confirmation of coverage outlined the pilot warranty requirements for both the pilot in command and the pilot second in command to be covered under the policy while operating the aircraft (Dkt. #22, Exhibit 5 at p. 4).

The confirmation of coverage expressly required that the pilot in command: "(a) must hold a multi-engine and instrument rating; (b) has logged a minimum of 4,000 total hours, of which 3,000 were in the multi-engine aircraft, of which 1,500 in turbo jet aircraft, of which 250 hours were in the make and model insured; and (c) must have successfully completed formal, annual ground and flight training the make and model insured, administered by a training facility agreed upon by QBE" (Dkt. #22, Exhibit 5 at pp. 4, 47).

The confirmation of coverage had similar requirements for the pilot second in command: "(a) must hold a multi-engine and instrument rating; (b) has logged a minimum of 1,500 hours, of which 500 were in multi-engine aircraft, of which 250 in turbo jet aircraft, of which 50 hours were in the make and model insured; and (c) must have successfully completed formal, annual ground

and flight training the make and model insured, administered by a training facility agreed upon by QBE" (Dkt. #22, Exhibit 5 at pp. 5, 47).

These pilot requirements were also reflected in the policy's Pilot Warranty Endorsement (Dkt. #22, Exhibit 5 at p. 117). That endorsement indicated that "[i]t is a condition of this insurance that when in flight, the aircraft will be operated only by pilot(s)" who are specifically named in the policy or meet the above referenced qualifications (Dkt. #22, Exhibit 5 at p. 117).

During the policy period, Xceed did not question any of the policy's terms or the Pilot Warranty Endorsement (Dkt. #22, Exhibit 5 at p. 5).

Interstate Helicopters, Inc. ("Interstate"), an aircraft management company, contracted with Xceed to hangar, maintain, and manage Xceed's aircraft (Dkt. #22, Exhibit 2 at p. 23). The parties dispute whether Interstate was an agent authorized by Xceed to make any changes to the aircraft's insurance policy or apply for any additional coverage. However, Interstate was responsible for providing updated pilot experience forms for various other aircraft insurance policies, not including the policy for Xceed's aircraft (Dkt. #22, Exhibit 5 at p. 7).

On January 18, 2023, an Interstate employee sent AssuredPartners an email with the subject "Pilot Experience Forms + New AC Info (Booth)" (Dkt. #22, Exhibit 5 at p. 7). The email contained a list of eight names, including Timothy Taylor's, along with ten pilot experience forms for pilots of various aircraft (Dkt. #22, Exhibit 5 at p. 7). One of the attached pilot experience forms was for Taylor, dated January 15, 2023 (Dkt. #22, Exhibit 5 at p. 8). The email stated the following next to Taylor's name: "new pilot will fly N550DW" (Dkt. #23 at p. 7). Taylor's pilot experience form indicated the make and model of Xceed's aircraft and that he had logged a total of zero pilot hours (Dkt. #23 at p. 8). Taylor's pilot experience form did not identify Xceed but identified

3

Southwest Airlines as Taylor's employer (Dkt. #22, Exhibit 5 at p. 8). According to AssuredPartners, the transmission of Taylor's incomplete pilot experience form was premature because the policy for Xceed's aircraft was not due for renewal until April 1, 2023 (Dkt. #22, Exhibit 5 at p. 8). The parties dispute whether Interstate's email constituted a request by Xceed for AssuredPartners to procure insurance coverage for Taylor.

In February and March 2023, AssuredPartners emailed Xceed on three separate occasions, requesting Xceed to provide updated information on the aircraft for its policy renewal (Dkt. #22, Exhibit 5 at p. 8). AssuredPartners' requests asked for completed pilot experience forms for all pilots who would fly the aircraft (Dkt. #22, Exhibit 5 at p. 9). Xceed never responded to these requests nor provided AssuredPartners the updated pilot information for the policy renewal (Dkt. #22, Exhibit 5 at p. 8–9).

On March 27, 2023, after Xceed had hired Taylor, Taylor and John Borden—the second-in-command pilot—conducted the emergency hard landing that totaled the aircraft (Dkt. #22 at p. 17; Exhibit 1 at p. 19; Exhibit 2 at p. 117). According to Interstate, because Taylor did not have single-pilot authority, Interstate assigned Borden to fly with him as the second-in-command pilot that day (Dkt. #22, Exhibit 1 at p. 19; Exhibit 2 at p. 20).

On March 28, 2023, Xceed submitted a claim for coverage under the aircraft's insurance policy for the damages sustained during the emergency landing (Dkt. #22, Exhibit 6 at p. 2). On April 27, 2023, QBE denied the claim in writing for two separate, independent reasons (Dkt. #22, Exhibit 6 at p. 2). The first reason was that Taylor did not meet a minimum of 250 hours of total time in the aircraft's make and model as required for commanding pilots (Dkt. #22, Exhibit 6 at p.

4

2). The second reason was that Borden failed to meet the various flight experience criteria required for secondary pilots (Dkt. #22, Exhibit 6 at pp. 2–3).

On June 29, 2023, Xceed filed suit in state court. On July 28, 2023, this case was removed based on diversity jurisdiction (Dkt. #1). No party contests the Court's jurisdiction to hear this case. On September 1, 2023, Xceed filed its Amended Complaint (Dkt. #9). On February 23, 2024, AssuredPartners filed the pending motion for summary judgment on Xceed's negligence claim. On March 15, 2024, Xceed filed a response (Dkt. #23). On March 22, 2024, AssuredPartners filed a reply (Dkt. #24).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of

material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

AssuredPartners argues that it is entitled to summary judgment on Xceed's negligence claim as a matter of law for several different reasons. First, AssuredPartners argues that it owed no duty to procure additional insurance for the aircraft because Xceed never requested additional coverage for Taylor. Second, AssuredPartners argues that it did not breach any duty owed because

it procured the exact insurance policy that Xceed had requested for the aircraft. Lastly, AssuredPartners argues that even if AssuredPartners had not breached a duty to procure additional insurance covering Taylor, Xceed's claim for the total loss of the aircraft would have nevertheless been denied because Borden, the second-in-command pilot, was unqualified under the policy.

Because the Court finds that AssuredPartners is entitled to summary judgment based solely on the issue of causation because of Borden, the Court declines to address the remaining issues of duty and breach.

At the outset of its causation argument, AssuredPartners notes that Xceed does not allege in the Amended Complaint (Dkt. #9) a cause of action with respect to the lack of insurance coverage for Borden's operation of the aircraft (Dkt. #22 at p. 32). AssuredPartners argues that Borden's failure to satisfy the pilot conditions of the policy was one of two "separate, independent reasons upon which QBE denied the [c]laim," the other being Taylor's failure to meet qualifications (Dkt. #22 at p. 32). In fact, QBE would not have endorsed Borden as a pilot authorized to operate the aircraft under the policy (Dkt. #22 at p. 33, Exhibit 7 at p. 2). Therefore, AssuredPartners argues that QBE would have denied Xceed's claim on the loss regardless of whether AssuredPartners breached a duty to procure additional insurance covering Taylor (Dkt. #22 at p. 33). In other words, AssuredPartners argues that the alleged breach did not cause Xceed's claimed damages.

Xceed argues in response that AssuredPartners' argument fails because the evidence shows that Interstate informed AssuredPartners that Borden would be flying the aircraft before the accident (Dkt. #23 at p. 20). Even if AssuredPartners was not notified that Borden would fly the aircraft, Xceed argues that AssuredPartners failure to obtain coverage for Taylor or to notify Xceed

7

that Taylor did not meet QBE's coverage requirements still caused Xceed's alleged damages (Dkt. #23 at p. 21). Xceed argues that there can be more than one proximate cause of an injury and that Texas law requires a showing that Borden's failure to satisfy the pilot requirements constituted a superseding, rather than concurring, cause (Dkt. #23 at p. 21–22). Xceed further argues that under Texas law a new and independent cause cannot arise from the negligence of the plaintiff or the defendant, thus preventing Xceed's failure to request insurance for Borden from destroying the causal connection between AssuredPartners' breach and Xceed's damages (Dkt. #23 at p. 23). Lastly, Xceed argues that proximate cause is a fact question that should be decided by the factfinder (Dkt. #23 at p. 24).

Under Texas law, negligence has three essential elements: "1) a legal duty owed by one person to another, 2) a breach of that duty, and 3) damages proximately resulting from the breach." *Critchfield v. Smith*, 151 S.W.3d 225, 230 (Tex. App. 2004). An insurance broker owes the following duties to a client when procuring insurance: "1) to use reasonable diligence in attempting to place the requested insurance, and 2) to inform the client promptly if unable to do so." *Id.* (citing *Moore v. Whitney-Vaky Ins. Agency*, 966 S.W.2d 690, 692 (Tex. App.—San Antonio 1998, no pet.)).

The Court finds that Xceed's negligence claim fails as a matter of law because Xceed has offered no proof that an insurance policy would have covered the loss of the aircraft. *See Valero Title Inc v. RLI Ins. Co.*, No. 4:19-CV-443, 2021 WL 5161920, at *2 (S.D. Tex. Mar. 30, 2021) ("To establish cause-in-fact for claims based on failure to procure sufficient insurance, a plaintiff must offer 'proof of an insurance policy that would cover the alleged injury.'") (quoting *Metro Allied Ins. Agency, Inc. v. Lin*, 304 S.W.3d 830, 834 (Tex. 2009)). The pertinent insurance policy that AssuredPartners procured for the aircraft does not provide coverage for the loss because not all

8

pilots who operated the aircraft at the time—namely, Borden—were qualified as required by the policy. Coverage, as reflected in the policy's confirmation of coverage and Pilot Warranty Endorsement, was conditioned upon the aircraft being operated only by pilots who were expressly named or who met specific qualifications (*see* Dkt. #22, Exhibit 5 at pp. 4, 117). As the second-in-command pilot, Borden failed to meet most of the requisite criteria such as having flown at least 50 hours in the make and model of the aircraft (Dkt. #22, Exhibit 6 at pp. 2–3). Thus, even if AssuredPartners had managed to procure QBE's endorsement of Taylor as a qualified pilot in the policy, coverage would have still been denied.

Moreover, there is no evidence that AssuredPartners could have procured some additional insurance policy from QBE or another company that would have covered the loss of the aircraft. There is also no evidence that, had Xceed been informed of Taylor's lack of coverage, Xceed would not have used Borden as a pilot to operate the aircraft. Though deposition testimony indicates that Borden flew with Taylor because Taylor did not have single-pilot authority (Dkt. #22, Exhibit 2 at p. 20), there is no evidence that Xceed would have used a pilot with single-pilot authority or would not have used Borden upon being notified of Taylor's lack of coverage. That said, Texas law ultimately requires evidence of an insurance policy that would have covered the loss of the aircraft. *See Metro Allied Ins. Agency, Inc.*, 304 S.W.3d at 834.

The Court finds Xceed's contention that AssuredPartners was informed that Borden would be flying the aircraft before the accident unavailing. In making such an argument, Xceed essentially implies that AssuredPartners also breached a duty to procure insurance covering Borden. However, "[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of*

9

*Supervisors*, 429 F.3d 108, 113 (5th Cir. 2005). Xceed does not allege any cause of action in the Amended Complaint based on the lack of insurance coverage for Borden (*see* Dkt. #9 at p. 6). Neither does Xceed allege that AssuredPartners was negligent with respect to Borden or that its failure to procure insurance coverage for Borden caused the denial of the claim on the total loss. Rather, Xceed alleges that AssuredPartners' negligent actions with respect to *Taylor* caused Xceed to suffer damages. Additionally, the deposition testimony relied upon by Xceed is confusing at best (*see* Dkt. #23 at p. 20, ¶ 44). It does not support Xceed's contention that Interstate informed AssuredPartners that Borden would be flying the aircraft before the accident. Instead, the testimony suggests that Interstate's corporate representative, James Johnson, did not tell anyone, besides the person who had recommended Borden, that Borden would be flying the aircraft (*see* Dkt. #23, Exhibit 1 at p. 10). Although earlier in the deposition Johnson suggested that he notified AssuredPartners by telephone that Borden "would be authorized or qualified to fly the airplane" (Dkt. #23, Exhibit 1 at p. 9), he later clarified that he had not given information about Borden piloting the aircraft to anyone and had only told someone whom Borden had flown for previously (Dkt. #23, Exhibit 1 at p. 10).

      Furthermore, the Court is unconvinced that a superseding cause analysis is required where there is no evidence of cause-in-fact or that "the loss is one insured against in some policy". *See Stinson v. Cravens, Dargan & Co.*, 579 S.W.2d 298, 299–300 (Tex. Civ. App.—Dallas 1979, no writ) (holding there must be proof that the loss was covered under an insurance policy). Under Texas law, proximate cause requires showing both cause-in-fact and foreseeability. *Collective Asset Partners LLC v. Schaumburg*, 432 S.W.3d 435, 438 (Tex. App.—Dallas 2014, pet. denied). Whether a superseding cause extinguishes liability is a question only asked when evaluating foreseeability.

10

*See Kristensen v. United States*, 993 F.3d 363, 368 (5th Cir. 2021) ("'Generally, a person's criminal conduct is a superseding cause extinguishing liability of negligent actor' unless the criminal conduct was a foreseeable result of that negligence.") (citing Texas law). Because there is no evidence of cause-in-fact, the Court need not conduct a superseding cause analysis.[1]

## CONCLUSION

It is therefore **ORDERED** that Defendant AssuredPartners Aerospace, LLC d/b/a Airsure Limited, LLC's Motion for Summary Judgment (Dkt. #22) is **GRANTED**. Plaintiff Xceed Management Group, LLC's sole negligence claim is hereby **DISMISSED with prejudice**.

**IT IS SO ORDERED**.

SIGNED this 31st day of July, 2024.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[1] The Court notes that Xceed fails to explain why the but-for causation standard should not apply to this case. Though Xceed cites caselaw illustrating that there can be more than one proximate cause of an injury and alludes to Borden's unqualified status as being a concurrent cause, Xceed offers no justification for supplanting the but-for causation standard in the context of a negligent failure to procure insurance claim. *See, e.g., Bostic v. Ga.-Pacific Corp.*, 439 S.W.3d 332, 344 (Tex. 2014) ("While but for causation is a core concept in tort law, it yields to the more general substantial factor causation in situations where proof of but for causation is not practically possible or such proof otherwise should not be required."). In this kind of case, it is beyond debate that Texas law requires proof that an insurance policy would have covered the loss, which is dispositively absent here. *See Metro Allied Ins. Agency, Inc.*, 304 S.W.3d at 834.